Filed 3/11/15  In re H.G. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re H.G., a Person Coming Under the Juvenile Court Law. _____ SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,       Plaintiff and Respondent       v. SIERRA G. et al.,       Defendants and Appellants. | D067035 (Super. Ct. No. EJ3693A) |

APPEAL from an order of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant Sierra G.

Patti L. Dikes, under appointment by the Court of Appeal, for Defendant and Appellant Jace G.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

Sierra G. appeals from an order terminating parental rights to her child H.G. (born 2012) under Welfare and Institutions Code section 366.26. (Undesignated statutory references are to this code.) Father, Jace G., joins in Sierra's arguments. Sierra contends the evidence was insufficient to support the juvenile court's finding that the beneficial relationship exception of section 366.26, subdivision (c)(1)(B)(i), did not apply. We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

In July 2013, when H.G. was about a year old, the Agency filed a petition alleging he was at substantial risk of harm due to his parents' unwillingness or inability to care for him due to their drug use and refusal to participate in substance abuse treatment. H.G. was detained in the home of the paternal grandmother. In September 2013, the juvenile court sustained the petition, declared H.G. a dependent, and placed him with the paternal grandmother. It ordered reunification services be provided and set a six-month review hearing.

In January 2014, the social worker permitted the parents to begin short, unsupervised visits. The parents, however, cancelled a number of visits and Sierra refused to see H.G. if Jace was not going to be present. That same month, the parents reported that Sierra was pregnant and they were contemplating giving the baby up for adoption. In February 2014, the social worker recommended terminating reunification services because Sierra had stopped attending her therapy sessions and Jace's therapist

2

reported a decrease in Jace's motivation and effort. In March 2014, the Agency reported that the parents were no longer participating in services.

At the six-month review hearing in April 2014, the juvenile court found the parents had failed to regularly participate and make substantive progress in their court-ordered treatment plans and returning H.G. to their custody would be detrimental. It also found the services provided had been reasonable, terminated reunification services and scheduled a hearing to select and implement a permanent plan. That same month, Jace was hospitalized after overdosing on heroin. In July 2014, Sierra gave birth to R.G. Both mother and child tested positive for amphetamines and opiates. In September 2014, R.G. was declared a dependent. The Agency did not offer reunification services to the parents as to R.G. In October 2014, the juvenile court concluded that none of the exceptions to adoption applied, terminated parental rights and ordered adoption as H.G.'s permanent plan. The parents timely appealed.

## DISCUSSION

Parental rights may be terminated if there is clear and convincing evidence of adoptability (§ 366.26, subd. (c)(1)); however, an exception exists where a parent has "maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) A beneficial relationship is one that promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with adoptive parents. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) The parent must show that the parent-child relationship is such that the child will be greatly harmed by the termination of parental

3

rights, so that the presumption in favor of adoption is overcome. (*In re Brittany C.* (1999) 76 Cal.App.4th 847, 853-854.)

Implicit in this standard is that "a parental relationship is necessary for the exception to apply, not merely a friendly or familiar one." (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350.) The existence of this relationship is determined by taking into consideration "[t]he age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs . . . ." (*In re Autumn H.*, *supra*, 27 Cal.App.4th at p. 576.) There is a split of authority regarding whether an appellate court reviews a challenge involving the beneficial relationship exception for substantial evidence, abuse of discretion, or a combination of the two. (See *In re K.P.* (2012) 203 Cal.App.4th 614, 621-622.) We need not weigh in on this debate as our conclusion is the same under any of these standards.

Sierra impliedly concedes that H.G. is adoptable, but asserts her parental rights should not have been terminated given the beneficial nature of her ongoing relationship with H.G. In making this argument, Sierra admits that although she did not have a perfect attendance record, her visitation was consistent and she built a bond with H.G.

In concluding that the beneficial relationship exception did not apply, the trial court did not make a finding on whether the parents' maintained regular visitation with H.G. The record reveals that early in the dependency proceedings the parents missed visits for numerous reasons, including Sierra's reluctance to visit H.G. without Jace. By July 2014, the parents had supervised visitation with H.G. twice a week for one hour in his caregivers' home. H.G.'s caregivers then changed the visits to out of the home when

4

the parents arrived for visitation appearing intoxicated. In September 2014, the parents visited H.G. once a week at a local park. Visitation stopped when the parents entered treatment facilities. In early October 2014, H.G. visited Sierra at her treatment facility and Jace had indicated a desire to visit with H.G.

This record shows sporadic visitation which is insufficient to satisfy the first prong of the parent-child relationship exception to adoption. (*In re C.F.* (2011) 193 Cal.App.4th 549, 554.) Nonetheless, even if we assume the first prong of section 366.26, subdivision (c)(1)(B)(i), has been met, we nonetheless conclude the juvenile court did err in determining the exception inapplicable as the record does not reveal the existence of a parental relationship that necessitated preservation at the expense of depriving H.G. of the permanency of adoption.

H.G. was less than 18 months old when the Agency removed him from his parents' care. When the court terminated parental rights, he had not lived with his parents for about 15 months. During this 15-month period, the parents' visitation remained sporadic. Sierra testified that H.G. often told her that he loved her, asked about coming home and would run to her and Jace saying "Mommy, Daddy." This testimony shows that H.G. enjoys a positive relationship with his parents. However, he was removed from their care at a very early age due to their drug use and since then has looked to his caregivers for his primary care, referring to them as "Mimi" and "Papa."

As the social worker noted, the parents have been unable to put H.G.'s needs above their drug use. Instead of reacting to H.G.'s removal as a wake-up call to change his lifestyle, Jace told his therapist in March 2014 that he was not willing or ready to give up drugs because he "needed" them. Sierra reported that she abused drugs throughout her

childhood. In July 2014, Sierra gave birth to H.G.'s brother, with her and the child testing positive for amphetamines and opiates. Standing alone, this fact shows Sierra's reluctance to change. While we commend the parents for ultimately entering residential treatment programs, this was too little and too late. The social worker noted that H.G.'s caregivers wanted to adopt him and concluded that adoption was in H.G.'s best interest based on his need for stability. The juvenile court was entitled to credit the assessments and conclusions of the social workers. (*In re Casey D.* (1999) 70 Cal App.4th 38, 53.) Moreover, "delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests." (*Id.* at p. 47.)

Accordingly, we uphold the juvenile court's conclusion that no beneficial relationship existed such that termination of parental rights would be detrimental to H.G.

DISPOSITION

The order is affirmed.

_____

McINTYRE, J.

WE CONCUR:

_____

NARES, Acting P. J.

_____

IRION, J.

6